ORIGINAL

1  KELLY A. JOHNSON
   Acting Assistant Attorney General
2  Environment and Natural Resources Division
   U.S. Department Of Justice
3  ROBERT D. MULLANEY
   Trial Attorney
4  California State Bar No. 116441
   Environmental Enforcement Section
5  U.S. Department of Justice
   301 Howard Street, Suite 1050
6  San Francisco, CA  94105
   Tel:  (415) 744-6491
7  Fax:  (415) 744-6476
   E-mail:  Robert.Mullaney@usdoj.gov

8  DEBRA WONG YANG
   United States Attorney
9  Central District of California
   LEON W. WEIDMAN
10 Chief, Civil Division
   MONICA L. MILLER
11 Assistant United States Attorney
   California State Bar No. 157695
12 Federal Building, Suite 7516
   300 North Los Angeles Street
13 Los Angeles, CA  90012
   Tel:  (213) 894-4061
14 Fax:  (213) 894-7819
   E-mail:  Monica.Miller@usdoj.gov

15 Attorneys for Plaintiff United States of America

16 FILED
   CLERK, U.S. DISTRICT COURT
   OCT 2 6 2005
17 CENTRAL DISTRICT OF CALIFORNIA
   BY            DEPUTY

18

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

19 UNITED STATES OF AMERICA,          )    Case No. CV05-7518 ~~MMM (FFx)~~  CAS (RZx)
                          Plaintiff,  )
20             v.                     )    CONSENT DECREE
                                      )
21                                    )
22 AZUSA LAND RECLAMATION             )
   CO., INC., et al.,                 )
23                     Defendants.    )
                                      )
24 ─────────────────────────────────  )

25

26 THIS CONSTITUTES NOTICE OF ENTRY
   AS REQUIRED BY FRCP, RULE 77(d).

27

28

FILED
CLERK, U.S. DISTRICT COURT
DEC 1 2 2005
CENTRAL DISTRICT OF CALIFORNIA
BY            DEPUTY

Priority
Send        X  Pages 1-35
Enter       X
Closed
JS-5/JS-6   X
JS-2/JS-3
Scan Only

ENTERED
CLERK, U.S. DISTRICT COURT
DEC 1 3 2005
CENTRAL DISTRICT OF CALIFORNIA
BY            DEPUTY

# TABLE OF CONTENTS

I. BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III. PARTIES BOUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV. DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

V. PAYMENT OF RESPONSE COSTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

VI. FAILURE TO COMPLY WITH CONSENT DECREE . . . . . . . . . . . . . . . 14

VII. COVENANTS NOT TO SUE BY PLAINTIFF . . . . . . . . . . . . . . . . . . . 16

VIII. RESERVATIONS OF RIGHTS BY PLAINTIFF . . . . . . . . . . . . . . . . . 16

IX. COVENANTS NOT TO SUE AND RESERVATION
    OF RIGHTS BY SETTLING DEFENDANTS . . . . . . . . . . . . . . . . . . . 17

X. EFFECT OF SETTLEMENT/CONTRIBUTION PROTECTION . . . . . . . . 18

XI. ACCESS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

XII. ACCESS TO INFORMATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

XIII. RETENTION OF RECORDS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

XIV. NOTICES AND SUBMISSIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

XV. EFFECTIVE DATE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

XVI. RETENTION OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . 25

XVII. INTEGRATION/APPENDICES . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

XVIII. LODGING AND OPPORTUNITY FOR PUBLIC COMMENT . . . . . . 25

i

1

XIX.  SIGNATORIES/SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

XX.  FINAL JUDGMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I. <u>BACKGROUND</u>

A.  Pursuant to Section 105 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9605, the United States Environmental Protection Agency ("EPA") placed the San Gabriel Valley Superfund Sites Areas 1-4 in Los Angeles County, California, including the Baldwin Park Operable Unit (Area 2) (the "BPOU Area"), on the National Priorities List, set forth at 40 C.F.R. Part 300, Appendix B, by publication in the Federal Register on May 8, 1984, 49 Fed. Reg. 19,480.

B.  On March 31, 1994, EPA executed a Record of Decision ("ROD") setting forth EPA's decision on the interim remedial action to be implemented at the BPOU Area.  In May 1999, EPA issued an Explanation of Significant Differences ("ESD") relating to the ROD.

C.  On February 28, 2002, EPA issued an amended Unilateral Administrative Order ("UAO") for Remedial Design and Remedial Action ("RD/RA") at the BPOU Area to Azusa Land Reclamation Co., Inc.; Fairchild Holding Corp.; Hartwell Corporation; Oil & Solvent Process Company; Reichhold, Inc.; and Wynn Oil Company, now known as Winco Enterprises Inc. (collectively, the "Settling Defendants"); and other Potentially Responsible Parties ("PRPs").  A copy of the UAO and the Statement of Work attached to and included as part of the UAO is attached to this Consent Decree, for reference only, as Appendix A.

D.  On March 29, 2002, Settling Defendants, Huffy Corporation, and Aerojet-General Corporation, collectively known as the "Cooperating Respondents," entered into the BPOU Project Agreement with local Water Entities, certain of which had sued the Cooperating Respondents and other PRPs pursuant to CERCLA Section 107(a), 42 U.S.C. § 9607(a), and other provisions of law.  The BPOU Project Agreement provides for the implementation of the BPOU Area interim remedy as a joint cleanup and water supply project.  The BPOU

1   Project Agreement makes the Cooperating Respondents responsible for funding

2   the design, construction, installation, operation, maintenance, and management of

3   the groundwater extraction, treatment, distribution, and monitoring facilities

4   (defined in the BPOU Project Agreement as "Subprojects") to the extent needed as

5   part of the joint cleanup and water supply project, and the Water Entities

6   responsible for the design, construction, installation, operation, maintenance, and

7   management of the Subprojects.  EPA has approved four of the BPOU Subprojects

8   as satisfying the Cooperating Respondents' obligations under the UAO.

9       E.  In performing response actions at the BPOU Area, the United States has

10  incurred and will continue to incur response costs at or in connection with the

11  BPOU Area.

12      F.  The United States, on behalf of the Administrator of EPA, filed a

13  complaint in this matter pursuant to Section 107 of CERCLA, 42 U.S.C. § 9607,

14  seeking reimbursement of response costs incurred or to be incurred for response

15  actions taken at or in connection with the release or threatened release of

16  hazardous substances at the BPOU Area, together with accrued interest.

17      G.  The Settling Defendants that have entered into this Consent Decree do

18  not admit any liability to Plaintiff arising out of the transactions or occurrences

19  alleged in the complaint, nor do they acknowledge that the release or threatened

20  release of hazardous substance(s) at or from the BPOU Area constitutes an

21  imminent or substantial endangerment to the public health or welfare or the

22  environment.  Except as otherwise provided in the Federal Rules of Evidence, the

23  Settling Defendants' participation in this settlement process and entry into this

24  Consent Decree shall not be considered as an admission of liability for any

25  purpose.

26      H.  The United States and Settling Defendants desire to resolve Settling

27  Defendants' alleged civil liability to the United States for Past Response Costs and

28  Oversight Costs, as those terms are defined herein, without further litigation and

2

1 without admission or adjudication of any issue of fact or law.  The purpose of this

2 Consent Decree is to resolve Settling Defendants' liability to the United States for

3 Past Response Costs and Oversight Costs by providing for Settling Defendants'

4 payment of a share of Past Response Costs, and for their continued compensation

5 of the United States for a share of Oversight Costs.  Except as otherwise settled by

6 this Consent Decree, this Decree does not address issues with respect to Settling

7 Defendants' obligations or continuing performance under the UAO.

8      I.  The United States and Settling Defendants agree, and this Court by

9 entering this Consent Decree finds, that this Consent Decree has been negotiated

10 by the Parties in good faith, that settlement of this matter will avoid prolonged and

11 complicated litigation between the Parties, and that this Consent Decree is fair,

12 reasonable, and in the public interest.

13      THEREFORE, with the consent of the Parties to this Decree, it is

14 ORDERED, ADJUDGED, AND DECREED:

15                          **II.  JURISDICTION**

16      1.  This Court has jurisdiction over the subject matter of this action pursuant

17 to 28 U.S.C. §§ 1331 and 1345 and 42 U.S.C. §§ 9607 and 9613(b) and also has

18 personal jurisdiction over Settling Defendants.  Solely for the purposes of this

19 Consent Decree and the underlying complaint, Settling Defendants waive all

20 objections and defenses that they may have to jurisdiction of the Court or to venue

21 in this District.  Settling Defendants shall not challenge the terms of this Consent

22 Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

23                        **III.  PARTIES BOUND**

24      2.  This Consent Decree is binding upon the United States, and upon

25 Settling Defendants and their respective successors and assigns.  Any change in

26 ownership or corporate or other legal status, including, but not limited to, any

27 transfer of assets or real or personal property, shall in no way alter the status or

28 responsibilities of Settling Defendants under this Consent Decree.

# IV.  DEFINITIONS

3. Unless otherwise expressly provided herein, terms used in this Consent Decree that are defined in CERCLA or in regulations promulgated under CERCLA shall have the meanings assigned to them in CERCLA or in such regulations.  Whenever terms listed below are used in this Consent Decree, the following definitions shall apply:

a. "Baldwin Park 09M5 Special Account" shall mean one of the special accounts established for the BPOU Area by EPA pursuant to Section 122(b)(3) of CERCLA, 42 U.S.C. § 9622(b)(3).

b. "BPOU Area" shall mean the Baldwin Park Operable Unit (Area 2) of the San Gabriel Valley Superfund Sites, Areas 1-4, in and near the cities of Azusa, Irwindale, and Baldwin Park, in Los Angeles County, California.  The BPOU Area is depicted generally on the map attached as Appendix B.

c. "BPOU Project Agreement" shall mean the agreement dated March 29, 2002, and declared effective as of May 9, 2002, by and between the "Water Entities" and the "Cooperating Respondents."

d. "CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. § 9601, *et seq*.

e. "Consent Decree" shall mean this Consent Decree only.  The appendices attached hereto are included for reference only and shall not constitute a part of this Consent Decree.

f. "Cooperating Respondents" shall mean Aerojet-General Corporation; Azusa Land Reclamation Co., Inc.; Fairchild Holding Corp.; Hartwell Corporation; Huffy Corporation; Oil & Solvent Process Company; Reichhold, Inc.; and Wynn Oil Company, now known as Winco Enterprises Inc.

g. "Day" shall mean a calendar day.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or

4

1  federal or California State holiday, the period shall run until the close of business
2  of the next working day.

3        h. "Defined BPOU Project Work" shall mean various BPOU
4  planning, reporting, design, construction, operation and maintenance, monitoring,
5  and evaluation activities completed before May 8, 2017, to implement planning or
6  design documents approved by EPA before May 31, 2005. Defined BPOU Project
7  Work shall include:

8        (1) Design and construction of the following four Subprojects:

9            (i) the La Puente Valley County Water District, San Gabriel
10           Valley Water Company B-6, and Valley County Water District
11           Subprojects as documented in Remedial Action Reports
12           completed for the three Subprojects. The three Remedial
13           Action Reports are dated September 2003, September 2004,
14           and March 2005, and were approved by EPA on September 30,
15           2003, September 30, 2004, and March 31, 2005, respectively;
16           and

17           (ii) the San Gabriel Valley Water Company B-5 ("B-5")
18           Subproject. EPA approved the design for the B-5 Subproject in
19           a letter dated September 29, 2004. Construction is expected to
20           continue into 2006;

21       (2) Operation and maintenance activities related to the four
22       Subprojects in subparagraph (1) until May 8, 2017;

23       (3) Preparation of, and activities implemented to comply with, the
24       January 30, 2004 Revised Final Performance Standards Evaluation
25       Plan submitted in accordance with the EPA approval letter dated
26       December 10, 2003.

27       i. "DOJ" shall mean the United States Department of Justice and any
28 of its successor departments, agencies, or instrumentalities.

1           j. "Effective Date" shall be the effective date of this Consent Decree

2  as provided in Paragraph 33.

3           k. "EPA" shall mean the United States Environmental Protection

4  Agency and any of its successor departments, agencies or instrumentalities.

5           l. "EPA Hazardous Substance Superfund" shall mean the Hazardous

6  Substance Superfund established by the Internal Revenue Code, 26 U.S.C. § 9507.

7           m. "Explanation of Significant Differences" or "ESD" shall mean the

8  Explanation of Significant Differences relating to the BPOU Area issued by EPA

9  in May 1999.  The ESD is attached as Appendix D.

10           n. "Interest" shall mean interest at the rate specified for interest on

11  investments of the EPA Hazardous Substance Superfund established by 26 U.S.C.

12  § 9507, compounded annually on October 1 of each year, in accordance with 42

13  U.S.C. § 9607(a).  The applicable rate of interest shall be the rate in effect at the

14  time the interest accrues.  The rate of interest is subject to change on October 1 of

15  each year.

16           o. "National Contingency Plan" or "NCP" shall mean the National

17  Oil and Hazardous Substances Pollution Contingency Plan promulgated pursuant

18  to Section 105 of CERCLA, 42 U.S.C. § 9605, codified at 40 C.F.R. Part 300, and

19  any amendments thereto.

20           p. "Oversight Costs" shall mean all costs, including, but not limited

21  to, direct and indirect costs, that are not inconsistent with the NCP and that are

22  incurred by the United States at or in connection with the BPOU Area on or after

23  July 1, 2004, until and including May 8, 2017 (the remaining term of the BPOU

24  Project Agreement) in:  reviewing, verifying or developing the plans, reports, and

25  other documents submitted or conducted pursuant to the UAO, this Consent

26  Decree, or the BPOU Project Agreement; reviewing or verifying the Work

27  conducted pursuant to the UAO or the BPOU Project Agreement; conducting

28  response activities pursuant to Section XIV (EPA Review of Submissions) of the

UAO, except for Paragraph 87(d) of the amended UAO issued on February 28, 2002, as it relates to EPA's performance of all or part of the response action; performing periodic remedial action reviews under Section XI (EPA Periodic Review) of the UAO or Section 121 of CERCLA, 42 U.S.C. § 9621; or implementing, overseeing, or enforcing this Consent Decree against Settling Defendants, including, but not limited to, payroll costs, contractor costs, travel costs, laboratory costs, costs of attorney time, costs of obtaining access to the BPOU Area, and Interest on all such costs accrued from the date payment of a specific amount is due under this Consent Decree.

q. "Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral or an upper or lower case letter.

r. "Parties" shall mean the United States and Settling Defendants.

s. "Past Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs, that EPA or DOJ on behalf of EPA has paid or incurred at or in connection with the BPOU Area through June 30, 2004, including all basin-wide costs to the extent that such costs are allocated to the BPOU, plus accrued Interest on all such costs through such date.

t. "Plaintiff" shall mean the United States.

u. "ROD" shall mean the EPA Record of Decision and all attachments thereto relating to the interim remedy for the BPOU Area, which was signed by the delegate of the Regional Administrator, EPA Region 9 on March 31, 1994. The ROD is attached as Appendix C.

v. "Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

w. "Settling Defendants" shall mean Azusa Land Reclamation Co., Inc., which was erroneously identified in the UAO as: (i) "Azusa Gas Systems (formerly known as Azusa Land Reclamation Co.)," (ii) "BFI/Azusa Gas Systems," and (iii) "Azusa Gas Systems (BFI);" Fairchild Holding Corp.; Hartwell

7

1  Corporation; Oil & Solvent Process Company; Reichhold, Inc., formerly known as

2  Reichhold Chemicals, Inc.; and Winco Enterprises Inc., formerly known as Wynn

3  Oil Company.  With respect to each Settling Defendant entity, for purposes of

4  Paragraphs 16, 17, 18, and 21, Settling Defendants shall also mean:

5              (i)  the predecessors of such entities;

6              (ii)  the subsidiaries of such entities;

7              (iii)  any shareholder, officer, director, or employee, acting in their

8              capacities as such, of each Settling Defendant or their predecessors or

9              subsidiaries; and

10             (iv)  with respect to Settling Defendant Azusa Land Reclamation Co.,

11             Inc. only, Browning Ferris Industries of California, Inc.;

12  but only to the extent that any such person or entity within categories (i), (ii), (iii)

13  or (iv) above has no independent liability for the BPOU Area other than the

14  liability derived from that person's or entity's relationship to, or affiliation with,

15  the Settling Defendant, as specified.

16             x.  "Site" shall mean the San Gabriel Valley Superfund Sites, Areas 1-

17  4, in Los Angeles County, California.

18             y.  "Site 0927 San Gabriel Valley/Baldwin Park Special Account"

19  shall mean one of the special accounts established for the BPOU Area by EPA

20  pursuant to Section 122(b)(3) of CERCLA, 42 U.S.C. § 9622(b)(3).

21             z.  "Unilateral Administrative Order" or "UAO" shall mean EPA's

22  June 30, 2000 Unilateral Administrative Order No. 2000-13 (as amended on

23  February 28, 2002), including the Statement of Work attached thereto, issued

24  under Section 106 of CERCLA, 42 U.S.C. § 9606, and Section 7003 of RCRA, 42

25  U.S.C. § 6973, relating to the BPOU Area.  The UAO is attached as Appendix A.

26             aa.  "United States" shall mean the United States of America,

27  including its departments, agencies and instrumentalities.

28             bb.  "Water Entities" shall mean the Main San Gabriel Basin

8

1 Watermaster, the San Gabriel Basin Water Quality Authority, La Puente Valley

2 County Water District, San Gabriel Valley Water Company, Suburban Water

3 Systems, California Domestic Water Company, and Valley County Water District,

4 and, only as to La Puente Valley County Water District, San Gabriel Valley Water

5 Company, Suburban Water Systems, California Domestic Water Company, and

6 Valley County Water District, their respective successors.

7       cc. "Work" shall mean all activities required to be performed to

8 implement the ROD, as supplemented by the ESD, at or in connection with the

9 BPOU Area.

10 **V. PAYMENT OF RESPONSE COSTS**

11     4. <u>Payment of Past Response Costs to EPA</u>.  Within 30 days of receipt of

12 written notice from the United States that it has received all signature pages from

13 the Settling Defendants, Settling Defendants shall deposit $2,900,000 into an

14 escrow account bearing interest on commercially reasonable terms, in a federally-

15 chartered bank.  If the Consent Decree is not entered by the Court, and the time for

16 any appeal of that decision has run or if the Court's denial of entry is upheld on

17 appeal, the monies placed in escrow, together with accrued interest thereon, shall

18 be returned to Settling Defendants.  If the Consent Decree is entered by the Court,

19 Settling Defendants shall, within 10 days after written notification from the United

20 States that the Consent Decree has been entered, cause the monies placed in

21 escrow, together with accrued interest thereon, to be paid to EPA in accordance

22 with the requirements of Paragraph 5.

23     5.  Payment of Past Response Costs shall be made by FedWire Electronic

24 Funds Transfer ("EFT") to the U.S. Department of Justice account in accordance

25 with EFT instructions to be provided to Settling Defendants by the Financial

26 Litigation Unit of the U.S. Attorney's Office in the Central District of California

27 following lodging of the Consent Decree.

28     6.  At the time of payment to the U.S. Department of Justice pursuant to

1   Paragraph 5, Settling Defendants shall also send notice that payment has been
2   made to EPA and DOJ in accordance with Section XIV (Notices and
3   Submissions).  Such notice shall reference EPA Region 9, Site Spill Numbers
4   09M5 and 0927, DOJ case number 90-11-2-354/17, and the civil action number.

5        7.  Of the total amount to be paid pursuant to Paragraph 4, $1,857,966 shall
6   be deposited in the Baldwin Park 09M5 Special Account within the EPA
7   Hazardous Substance Superfund, and the balance of the amount ($1,042,034 and
8   any accumulated interest) shall be deposited in the Site 0927 San Gabriel
9   Valley/Baldwin Park Special Account within the EPA Hazardous Substance
10  Superfund, to be retained and used to conduct or finance response actions at or in
11  connection with the BPOU Area, or to be transferred by EPA to the EPA
12  Hazardous Substance Superfund.

13       8.  Payment of Oversight Costs to EPA.  Settling Defendants shall
14  reimburse the United States for a total of 20 percent of all Oversight Costs.
15  Periodically, the United States will send Settling Defendants a bill requiring
16  payment that includes an accounting of Oversight Costs.  This accounting will
17  include a standard Regionally-prepared cost summary, which includes direct and
18  indirect costs incurred by EPA and its contractors, and a DOJ cost summary that
19  reflects costs incurred by DOJ and its contractors, if any.  Settling Defendants
20  shall make all payments within 60 days of Settling Defendants' receipt of each bill
21  requiring payment, except as otherwise provided in Paragraph 10.  EPA may, in its
22  sole discretion, extend the time period for payment.  The Settling Defendants shall
23  make all payments required by this Paragraph in the form of a certified or cashier's
24  check or checks made payable to "EPA Hazardous Substance Superfund" or an
25  EFT to the EPA Hazardous Substance Superfund account in accordance with EFT
26  instructions to be provided to Settling Defendants by EPA.  The payments shall
27  reference the name and address of the parties making payment, EPA Region 9 and
28  Site Spill Number 09M5, DOJ case number 90-11-2-354/17, and the civil action

1   number. If payment is made by check, the Settling Defendants shall forward the

2   certified or cashier's check(s) to:

3                  EPA - Cincinnati Accounting Operations
                   Attn: Region 9 Receivables

4                  P.O. Box 371099M
                   Pittsburgh, PA  15251

5

6   Settling Defendants shall send copies of the check(s) or notice of the EFT payment

7   to DOJ, EPA, and the Regional Financial Management Officer, in accordance with

8   Section XIV (Notices and Submissions). The total amount to be paid pursuant to

9   Paragraph 8 shall be deposited in the Baldwin Park 09M5 Special Account within

10   the EPA Hazardous Substance Superfund to be retained and used to conduct or

11   finance response actions at or in connection with the BPOU Area, or to be

12   transferred by EPA to the EPA Hazardous Substance Superfund.

13       9. Except as otherwise settled by this Consent Decree, the Parties agree that

14   this Consent Decree does not address Settling Defendants' obligations or

15   continued performance under the UAO.

16       10. <u>Dispute Resolution for Oversight Costs.</u>

17         a. Standard. Settling Defendants may contest payment of any

18   Oversight Costs billed by the United States if they determine that the United States

19   has made an accounting error or has included costs outside the scope of this

20   Consent Decree, or if they allege that a cost item that is included represents costs

21   that are inconsistent with the NCP.

22         b. Procedures. The dispute resolution procedures set forth in this

23   Paragraph shall be the exclusive mechanism for resolving disputes regarding the

24   Settling Defendants' obligation to reimburse the United States for its Oversight

25   Costs.

26         c. Dispute Resolution. The dispute resolution mechanism described

27   in this Paragraph is only available if the Settling Defendants comply with the

28   following conditions:

1    (1) Notice.  Any objection to the payment of Oversight Costs shall be

2 made in writing within 60 days of receipt of the bill and accompanying accounting

3 of costs and must be sent to the United States in accordance with Section XIV

4 (Notices and Submissions).  EPA may, in its sole discretion, extend the time

5 period for payment.  Any such objection (hereinafter referred to as the "Notice of

6 Objection") shall specifically identify the contested Oversight Costs and the basis

7 for objection.

8    (2) Payment of Undisputed Amounts.  In the event of an objection to

9 some but not all Oversight Costs, the Settling Defendants shall, within the 60-day

10 period, pay all uncontested Oversight Costs to the United States in the manner

11 described in Paragraph 8.

12    (3) Escrow for Disputed Amounts.  Within 60 days of receipt of a bill

13 for Oversight Costs that are disputed, the Settling Defendants shall establish an

14 interest-bearing escrow account in a federally-insured bank and remit to that

15 escrow account funds equivalent to the amount of the contested Oversight Costs.

16 The Settling Defendants shall send to the United States, as provided in Section

17 XIV (Notices and Submissions), a copy of the correspondence that establishes and

18 funds the escrow account, including, but not limited to, information containing the

19 identity of the bank and bank account under which the escrow account is

20 established as well as a bank statement showing the initial balance of the escrow

21 account.

22    d.  Informal Dispute Resolution.  Any dispute with respect to

23 Oversight Costs shall in the first instance be the subject of informal negotiations

24 between the United States and the Settling Defendants.

25    e.  Formal Dispute Resolution.

26    (1) Initiation.  If the dispute is not resolved by informal dispute

27 resolution, either party may commence formal dispute resolution by sending a

28 Notice of Formal Dispute Resolution to the other party to the dispute.  The Notice

1   of Formal Dispute Resolution shall be accompanied by a written Statement of

2   Position by the party who serves the Notice, stating the basis of that party's

3   position and citing all factual data, analysis, opinion or other information on which

4   that party relies to support its position.  The opposing party shall have 30 days in

5   which to serve a Response setting forth the same information supporting its

6   position.

7        (2)  Administrative Record and Decision.  EPA shall maintain an

8   administrative record of any dispute as to Oversight Costs for which formal

9   dispute resolution has been initiated.  The administrative record shall include the

10  disputed bill and all cost documentation sent by EPA to the Settling Defendants,

11  the Notice of Objection served by Settling Defendants, the Notice of Formal

12  Dispute Resolution and accompanying Statement of Position, the opposing party's

13  Response, and any other documents or information sent to EPA by Settling

14  Defendants for inclusion in the record or relied on by EPA in reaching an

15  administrative resolution of the dispute.  The Director of the Superfund Division,

16  EPA Region IX, will issue a final administrative decision determining whether the

17  disputed Oversight Costs, or any part of them, shall be disallowed as inconsistent

18  with the NCP, as the result of an accounting error, or as costs outside the scope of

19  this Consent Decree.

20       (3)  Judicial Appeal.  The Settling Defendants may appeal EPA's

21  administrative decision made pursuant to the preceding subparagraph to this Court

22  within 30 days of their receipt of EPA's decision.  The Court's review of EPA's

23  decision shall be limited to EPA's administrative record except to the extent that

24  Settling Defendants establish that supplemental materials may be considered by

25  the Court under CERCLA and applicable principles of administrative law.

26  Judicial review of any dispute under this subparagraph shall be governed by

27  CERCLA and applicable principles of administrative law.

28       f.  Payment Following Dispute Resolution.  Payments determined to

13

1 be owing to the United States following dispute resolution shall be paid from the

2 escrow account (including accrued Interest on the amounts owed) to the United

3 States in the manner described in Paragraph 8 within 10 days after receipt of the

4 Court's decision or, if EPA's final administrative decision is not timely appealed,

5 within 40 days after EPA's decision.  To the extent that any amounts are

6 determined not to be owed, the Settling Defendants shall be disbursed the

7 remainder of the escrow account.

8          ## VI.  <u>FAILURE TO COMPLY WITH CONSENT DECREE</u>

9          11. <u>Interest on Late Payments</u>.  If Settling Defendants fail to make payment

10 to the United States under Paragraph 4 (Payment of Past Response Costs to EPA)

11 or Paragraph 8 (Payment of Oversight Costs to EPA), Interest shall accrue on the

12 unpaid balance from the due date through the date of payment.

13          12. <u>Stipulated Penalty</u>.

14          a.  If any payment to the United States due under Paragraph 4 is not

15 paid by the required date, Settling Defendants shall be in violation of this Consent

16 Decree and shall pay to EPA, as a stipulated penalty, in addition to the Interest

17 required by Paragraph 11, $1,000 per day that such payment is late.

18          b.  If any amounts due under Paragraph 8 are not either paid by the

19 required date or paid into escrow in accordance with Paragraph 10(c)(3), the

20 Settling Defendants shall pay to EPA, in addition to the Interest required in

21 Paragraph 11, the following stipulated penalties, which shall accrue per violation

22 per day:

23

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $500 | 1st through 30th day |
| $1,000 | 31st day and beyond |

26          c.  Stipulated penalties are due and payable within 30 days after

27 the date of the demand by EPA for payment of the penalties.  All payments

28 to EPA under this Paragraph shall be identified as "stipulated penalties" and

shall be made by certified or cashier's check made payable to "EPA Hazardous Substance Superfund." The check, or a letter accompanying the check, shall reference the name and address of the party making payment, the Site name, EPA Region 9 and Site Spill Number 09M5, DOJ Case Number 90-11-2-354/17, and the civil action number, and shall be sent to:

> EPA - Cincinnati Accounting Operations
> Attn:  Region 9 Receivables
> P.O. Box 371099M
> Pittsburgh, PA  15251

d. At the time of payment of any stipulated penalties to the United States, Settling Defendants shall send copies of check(s), and any accompanying transmittal letter(s), to DOJ, EPA, and the Regional Financial Management Officer as provided in Section XIV (Notices and Submissions) of this Consent Decree.  Such notice shall reference the EPA Region and Site Spill Number 09M5, DOJ Case Number 90-11-2-354/17, and the civil action number.

e.  Stipulated penalties shall accrue as provided in this Paragraph regardless of whether EPA has notified Settling Defendants of the violation or made a demand for payment, but need only be paid upon demand.  All penalties shall begin to accrue on the day after payment is due and shall continue to accrue through the date of payment.  Nothing herein shall prevent the simultaneous accrual of separate penalties for separate violations of this Consent Decree.

13. If the United States brings an action to enforce this Consent Decree, Settling Defendants shall reimburse the United States for all costs of such action, including, but not limited to, costs of attorney time.

14. Payments made under this Section shall be in addition to any other remedies or sanctions available to Plaintiff by virtue of Settling Defendants' failure to comply with the requirements of this Consent Decree.

1    15. Notwithstanding any other provision of this Section, the United

2    States may, in its unreviewable discretion, waive payment of any portion of

3    the stipulated penalties that have accrued to the United States pursuant to

4    this Consent Decree. Payment of stipulated penalties shall not excuse

5    Settling Defendants from payment as required by Section V or from

6    performance of any other requirements of this Consent Decree.

7    **VII. <u>COVENANTS NOT TO SUE BY PLAINTIFF</u>**

8    16. <u>Covenants Not to Sue.</u> Except as specifically provided in Section

9    VIII (Reservations of Rights by Plaintiff), the United States covenants not to

10   sue or to take administrative action against Settling Defendants pursuant to

11   Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), to recover Past Response

12   Costs or Oversight Costs as defined in this Consent Decree. These covenants

13   not to sue or to take administrative action (1) are conditioned upon the

14   satisfactory performance by Settling Defendants of their obligations under

15   this Consent Decree, (2) do not extend to any other person, and (3) shall take

16   effect upon receipt by EPA of all payments required by Paragraph 4 and any

17   related amount due under Section VI (Failure to Comply with Consent

18   Decree), Paragraphs 11 and 12, on account of late payment of Past Response

19   Costs.

20   **VIII. <u>RESERVATIONS OF RIGHTS BY PLAINTIFF</u>**

21   17. The United States reserves, and this Consent Decree is without

22   prejudice to, all rights against Settling Defendants with respect to all matters

23   not expressly included within the Covenants Not to Sue in Paragraph 16.

24   Notwithstanding any other provision of this Consent Decree, the United

25   States reserves all rights against Setting Defendants with respect to:

26       a. liability for failure of Settling Defendants to meet a

27   requirement of this Consent Decree;

28       b. liability for costs incurred or to be incurred by the United

16

1  States that are not within the definitions of Past Response Costs or Oversight

2  Costs;

3        c. liability for injunctive relief, any administrative action (except

4  to the extent settled in this Consent Decree), fines, and/or punitive damages

5  under Sections 106 or 107(c)(3) of CERCLA, 42 U.S.C. §§ 9606, 9607(c)(3);

6        d. liability for any and all response costs incurred by the United

7  States (that are not within the definitions of Past Response Costs or Oversight

8  Costs) that are related to Settling Defendants' violation of, or failure or

9  refusal to comply with, the UAO;

10        e. liability for additional operable units at the Site, or a final

11  response action, including, but not limited to, the final Record of Decision for

12  the BPOU Area;

13        f. criminal liability; and

14        g. liability for damages for injury to, destruction of, or loss of

15  natural resources, and for the costs of any natural resource damage

16  assessments.

17  **IX.  COVENANTS NOT TO SUE AND RESERVATION**

18  **OF RIGHTS BY SETTLING DEFENDANTS**

19      18. Covenants Not to Sue; Reservation of Rights.

20        a. Settling Defendants covenant not to sue and agree not to

21  assert any claims or causes of action against the United States or its

22  contractors or employees, with respect to Past Response Costs, Oversight

23  Costs, or this Consent Decree, including, but not limited to:

24        i. any direct or indirect claim for reimbursement from the

25  Hazardous Substance Superfund based on Sections 106(b)(2), 107, 111, 112,

26  or 113 of CERCLA, 42 U.S.C. §§ 9606(b)(2), 9607, 9611, 9612, or 9613, or

27  any other provision of law;

28        ii. any claim for Past Response Costs or Oversight Costs

1  arising out of the response actions at the Site for which the Past Response

2  Costs or Oversight Costs were incurred, including any claim under the United

3  States Constitution, the Constitution of the State of California, the Tucker

4  Act, 28 U.S.C. § 1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, as

5  amended, or at common law; or

6                       iii.  any claim against the United States pursuant to

7  Sections 107 or 113 of CERCLA, 42 U.S.C. §§ 9607, 9613, relating to Past

8  Response Costs or Oversight Costs.

9          b.  With respect to the Defined BPOU Project Work, Settling

10  Defendants covenant not to sue and agree not to assert any direct or indirect

11  claim for reimbursement from the Hazardous Substance Superfund based on

12  Sections 106(b)(2), 107, 111, 112, or 113 of CERCLA, 42 U.S.C.

13  §§ 9606(b)(2), 9607, 9611, 9612, or 9613, or any other provision of law.

14          c.  Except as provided in Paragraph 18.b., Settling Defendants

15  reserve the right to sue or assert claims or defenses as to Work, including any

16  Defined BPOU Project Work, and the United States reserves all defenses to

17  such claims.

18      19.  Nothing in this Consent Decree shall be deemed to constitute

19  approval or preauthorization of a claim within the meaning of Section 111 of

20  CERCLA, 42 U.S.C. § 9611, or 40 C.F.R. § 300.700(d).

21  **X. <u>EFFECT OF SETTLEMENT/CONTRIBUTION PROTECTION</u>**

22      20.  Except as provided in Paragraph 2 with respect to successors and

23  assigns and as provided in the definition of Settling Defendants with respect

24  to Paragraphs 16, 17, 18, and 21, nothing in this Consent Decree shall be

25  construed to create any rights in, or grant any cause of action to, any person

26  not a Party to this Consent Decree.  The Parties expressly reserve any and all

27  rights (including, but not limited to, any right to contribution), defenses,

28  claims, demands, and causes of action that they may have with respect to any

1    matter, transaction, or occurrence relating in any way to the Site against any

2    person not a Party hereto.

3        21. The Parties agree, and by entering this Consent Decree this Court

4    finds, that Settling Defendants are entitled, as of the date of entry of this

5    Consent Decree, to protection from contribution actions or claims as provided

6    by Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), for "matters

7    addressed" in this Consent Decree. The "matters addressed" in this Consent

8    Decree are Past Response Costs and Oversight Costs as defined in this

9    Consent Decree.

10       22. Settling Defendants agree that, with respect to any suit or claim for

11   contribution brought by them for matters related to this Consent Decree, they

12   will notify EPA and DOJ in writing no later than 60 days prior to the

13   initiation of such suit or claim. Settling Defendants also agree that, with

14   respect to any suit or claim for contribution brought against them for matters

15   related to this Consent Decree, they will notify EPA and DOJ in writing

16   within 10 days of service of the complaint or claim upon them. In addition,

17   Settling Defendants shall notify EPA and DOJ within 10 days of service or

18   receipt of any Motion for Summary Judgment, and within 10 days of receipt

19   of any order from a court setting a case for trial, for matters related to this

20   Consent Decree.

21       23. In any subsequent administrative or judicial proceeding initiated

22   by the United States for injunctive relief, recovery of response costs, or other

23   relief relating to the Site, Settling Defendants shall not assert, and may not

24   maintain, any defense or claim based upon the principles of waiver, *res

25   judicata*, collateral estoppel, issue preclusion, claim-splitting, or other

26   defenses based upon any contention that the claims raised by the United

27   States in the subsequent proceeding were or should have been brought in the

28   instant case; provided, however, that nothing in this Paragraph affects the

1   enforceability of the Covenants Not to Sue by Plaintiff set forth in Section

2   VII.

3   ## XI. ACCESS

4       24. If the Site, or any other property where access is needed to

5   implement response activities at the Site, is owned or controlled by any of the

6   Settling Defendants, such Settling Defendants shall, commencing on the date

7   of lodging of this Consent Decree, provide the United States and its

8   representatives, including EPA and contractors, with access at all reasonable

9   times to the Site, or to such other property, for the purpose of conducting any

10   response activity related to the Site, including, but not limited to, the

11   following activities:

12       1. Monitoring, investigation, removal, remedial or other

13   activities at the Site;

14       2. Verifying any data or information submitted to the

15   United States;

16       3. Conducting investigations relating to contamination at

17   or near the Site;

18       4. Obtaining samples;

19       5. Assessing the need for, planning, or implementing

20   response actions at or near the Site;

21       6. Inspecting and copying records, operating logs,

22   contracts, or other documents maintained or generated by Settling Defendants

23   or their agents, consistent with Section XII (Access to Information); and

24       7. Assessing Settling Defendants' compliance with this

25   Agreement.

26       25. Notwithstanding any provision of this Agreement, EPA retains all

27   of its access authorities and rights, as well as all of its rights to require

28   land/water use restrictions, including enforcement authorities related thereto,

1 | under CERCLA, RCRA, and any other applicable statutes or regulations.

2 | ## XII. ACCESS TO INFORMATION

3 |    26.  Until May 8, 2017, Settling Defendants shall provide to EPA, upon

4 | request, copies of all records, reports, or information (hereinafter referred to

5 | as "records") within their possession or control or that of their contractors or

6 | agents relating to activities at the Site or to the implementation of this

7 | Consent Decree, including, but not limited to, sampling, analysis, chain of

8 | custody records, manifests, trucking logs, receipts, reports, sample traffic

9 | routing, correspondence, or other documents or information related to the

10 | Site.

11 |    27.  Confidential Business Information and Privileged Documents.

12 |       a.  Settling Defendants may assert business confidentiality claims

13 | covering part or all of the records submitted to Plaintiff under this Consent

14 | Decree to the extent permitted by and in accordance with Section 104(e)(7) of

15 | CERCLA, 42 U.S.C. § 9604(e)(7), and 40 C.F.R. § 2.203(b).  Records

16 | determined to be confidential by EPA will be accorded the protection

17 | specified in 40 C.F.R. Part 2, Subpart B.  If no claim of confidentiality

18 | accompanies records when they are submitted to EPA, or if EPA has notified

19 | Settling Defendants that the records are not confidential under the standards

20 | of Section 104(e)(7) of CERCLA or 40 C.F.R. Part 2, Subpart B, the public

21 | may be given access to such records without further notice to Settling

22 | Defendants.

23 |       b.  Settling Defendants may assert that certain records are

24 | privileged under the attorney-client privilege or any other privilege

25 | recognized by federal law.  If Settling Defendants assert such a privilege in

26 | lieu of providing records, they shall provide Plaintiff with the following:

27 | 1) the title of the record; 2) the date of the record; 3) the name, title,

28 | affiliation (*e.g.*, company or firm), and address of the author of the record;

1  4) the name and title of each addressee and recipient; 5) a description of the

2  subject of the record; and 6) the privilege asserted. If a claim of privilege

3  applies only to a portion of a record, the record shall be provided to Plaintiff

4  in redacted form to mask the privileged information only. Settling

5  Defendants shall retain all records that they claim to be privileged until the

6  United States has had a reasonable opportunity to dispute the privilege claim

7  and any such dispute has been resolved in the Settling Defendants' favor.

8  However, no records created or generated pursuant to the requirements of this

9  or any other settlement with EPA pertaining to the Site shall be withheld on

10  the grounds that they are privileged.

11      28.  No claim of business confidentiality shall be made with respect to

12  any information or data within the scope of Section 104(e)(7)(F) of CERCLA,

13  42 U.S.C. § 9604(e)(7)(F), including, but not limited to, all sampling,

14  analytical, monitoring, hydrogeologic, scientific, chemical, or engineering

15  data, or any other documents or information evidencing conditions at or

16  around the Site.

17            **XIII.  RETENTION OF RECORDS**

18      29.  Until May 8, 2017, Settling Defendants shall preserve and retain

19  all records now in their possession or control, or which come into their

20  possession or control, that relate in any manner to response actions taken at

21  the Site or the liability of any person under CERCLA with respect to the Site,

22  regardless of any corporate retention policy to the contrary.

23      30.  After the conclusion of the document retention period described in

24  the preceding Paragraph, Settling Defendants shall notify EPA and DOJ at

25  least 90 days prior to the destruction of any such records, and, upon request

26  by EPA or DOJ, Settling Defendants shall deliver any such records to EPA.

27  Settling Defendants may assert that certain records are privileged under the

28  attorney-client privilege or any other privilege recognized by federal law.  If

1   Settling Defendants assert such a privilege, they shall provide Plaintiff with

2   the following:  1) the title of the record; 2) the date of the record; 3) the name,

3   title, affiliation (*e.g.*, company or firm), and address of the author of the

4   record; 4) the name and title of each addressee and recipient; 5) a description

5   of the subject of the record; and 6) the privilege asserted.  If a claim of

6   privilege applies only to a portion of a record, the record shall be provided to

7   Plaintiff in redacted form to mask the privileged information only.  Settling

8   Defendants shall retain all records that they claim to be privileged until the

9   United States has had a reasonable opportunity to dispute the privilege claim

10  and any such dispute has been resolved in the Settling Defendants' favor.

11  However, no records created or generated pursuant to the requirements of this

12  or any other settlement with EPA pertaining to the Site shall be withheld on

13  the grounds that they are privileged.

14      31.  Each Settling Defendant hereby certifies that, to the best of its

15  knowledge and belief, after thorough inquiry, it has not altered, mutilated,

16  discarded, destroyed or otherwise disposed of any records, reports, or

17  information relating to its potential liability regarding the Site since

18  notification of potential liability by the United States or the filing of suit

19  against it regarding the Site and that it has fully complied with any and all

20  EPA requests for information pursuant to Sections 104(e) and 122(e) of

21  CERCLA, 42 U.S.C. §§ 9604(e), 9622(e), and Section 3007 of RCRA, 42

22  U.S.C. § 6972.

23          **XIV.  NOTICES AND SUBMISSIONS**

24      32.  Whenever, under the terms of this Consent Decree, notice is

25  required to be given or a document is required to be sent by one party to

26  another, it shall be directed to the individuals at the addresses specified

27  below, unless those individuals or their successors give notice of a change to

28  the other Parties in writing.  Written notice as specified herein shall constitute

1  complete satisfaction of any written notice requirement of the Consent Decree

2  with respect to the United States, EPA, DOJ, and Settling Defendants.

3  <u>As to the United States</u>:

4  <u>As to DOJ</u>:

5  Chief, Environmental Enforcement Section
   Environment and Natural Resources Division
6  U.S. Department of Justice
   P.O. Box 7611, Ben Franklin Station
7  Washington, D.C.  20044
   Re:  DJ # 90-11-2-354/17
8          and
   Robert D. Mullaney
9  Trial Attorney
   Environmental Enforcement Section
10 U.S. Department of Justice
   301 Howard Street, Suite 1050
11 San Francisco, CA  94105

12 <u>As to EPA</u>:

13 Lewis C. Maldonado, ORC-3
   Assistant Regional Counsel
14 United States Environmental Protection Agency
   75 Hawthorne Street
15 San Francisco, CA  94105
          and
16 Wayne Praskins, SFD-7-3
   EPA Project Coordinator
17 United States Environmental Protection Agency
   75 Hawthorne Street
18 San Francisco, CA  94105

19 <u>As to the Regional Financial Management Officer</u>:

20 Joe Schmidt, PMD-5
   United States Environmental Protection Agency
21 75 Hawthorne Street
   San Francisco, CA  94105

22

23 <u>As to the Settling Defendants</u>:

24      When notice is given, it shall be given to each Settling Defendant at the

25 address specified on each signature page.

26              **XV.  EFFECTIVE DATE**

27      33.  The effective date of this Consent Decree shall be the date upon

28 which this Consent Decree is entered by the Court, except as otherwise

1   provided herein.

2   **XVI. <u>RETENTION OF JURISDICTION</u>**

3       34.  This Court shall retain jurisdiction over this matter for the purpose

4   of interpreting and enforcing the terms of this Consent Decree.

5   **XVII. <u>INTEGRATION/APPENDICES</u>**

6       35.   This Consent Decree constitutes the final, complete and exclusive

7   agreement and understanding among the Parties with respect to the settlement

8   embodied in this Consent Decree.  The Parties acknowledge that there are no

9   representations, agreements or understandings relating to the settlement other

10  than those expressly contained in this Consent Decree.  The following

11  appendices are attached to this Consent Decree for reference only:

12      "Appendix A" is a copy of the UAO and the SOW attached to and

13  included as part of the UAO;

14      "Appendix B" is a map that generally depicts the BPOU Area;

15      "Appendix C" is a copy of the ROD; and

16      "Appendix D" is a copy of the ESD.

17  **XVIII. <u>LODGING AND OPPORTUNITY FOR PUBLIC COMMENT</u>**

18      36.  This Consent Decree shall be lodged with the Court for a period of

19  not less than 30 days for public notice and comment.  The United States

20  reserves the right to withdraw or withhold its consent if the comments

21  regarding the Consent Decree disclose facts or considerations indicating that

22  this Consent Decree is inappropriate, improper, or inadequate.  Settling

23  Defendants consent to the entry of this Consent Decree in the form presented

24  without further notice.

25      37.  If for any reason this Court should decline to approve this Consent

26  Decree in the form presented, this agreement is voidable at the sole discretion

27  of any party and the terms of the agreement may not be used as evidence in

28  any litigation between the Parties.

### XIX. **SIGNATORIES/SERVICE**

38. Each undersigned representative of Settling Defendants to this Consent Decree and the Assistant Attorney General for the Environment and Natural Resources Division of the United States Department of Justice, or her delegate, certifies that he or she is authorized to enter into the terms and conditions of this Consent Decree and to execute and bind legally the party he or she represents to this document.

39. Settling Defendants hereby agree not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree, unless the United States has notified Settling Defendants in writing that it no longer supports entry of the Consent Decree.

40. Each Settling Defendant shall identify, on the attached signature pages, the name and address of an agent who is authorized to accept service of process by mail on behalf of such Settling Defendant with respect to all matters arising under or relating to this Consent Decree.  Each Settling Defendant hereby agrees to accept service in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including, but not limited to, service of a summons.  The Parties agree that Settling Defendants need not file an answer to the complaint in this action unless or until the Court expressly declines to enter this Consent Decree.

### XX. **FINAL JUDGMENT**

41. Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute the final judgment between and among the United States and Settling Defendants.  The Court finds that there is no just

1 | reason for delay and therefore enters this judgment as a final judgment under

2 | Fed. R. Civ. P. 54 and 58.

3

4 | Dated: _12/12/05_          _Christina A. Snyder_

5 |                            United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

27

1      THE UNDERSIGNED PARTY enter into this Consent Decree in the matter of United States v. Azusa Land Reclamation Co., Inc., et al., relating to

2 the BPOU Area.

3 FOR THE UNITED STATES OF AMERICA

4

5

6 Dated: _9/16/05_           _Kelly A Johnson_

7                                  Kelly A. Johnson

8                                  Acting Assistant Attorney General
Environment and Natural Resources

9                                  Division
U.S. Department of Justice
Washington, D.C.  20530

10

11

12

13 Dated: _10-25-05_          _Robert D Mullaney_

14                                  Robert D. Mullaney
Trial Attorney

15                                  Environmental Enforcement Section
Environment and Natural Resources

16                                  Division
U.S. Department of Justice

17                                  301 Howard Street, Suite 1050
San Francisco, California 94105

18

19

20

21

22

23

24

25

26

27

28

1    THE UNDERSIGNED PARTY enter into this Consent Decree in the
matter of United States v. Azusa Land Reclamation Co., Inc., et al., relating to
2  the BPOU Area.

3

4  Dated: 9/23/05

5                                    Keith Takata
                                     Director, Superfund Division
6                                    Region IX
                                     U.S. Environmental Protection Agency
7                                    75 Hawthorne Street
                                     San Francisco, CA  94105
8

9

10  Dated: 9-27-05

11                                   Lewis C. Maldonado
                                     Assistant Regional Counsel
12                                   U.S. Environmental Protection Agency
                                     Region IX
13                                   San Francisco, CA  94105

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29

1    THE UNDERSIGNED PARTY enters into this Consent Decree in the
2  matter of United States v. Azusa Land Reclamation Co., Inc., et al., relating to
    the BPOU Area.

3

4  FOR DEFENDANT AZUSA LAND RECLAMATION CO., INC.

5

6

7  Dated: __6-17-05__                    _____
                                          Jo Lynn White
8                                         Secretary, Browning-Ferris
                                          Industries of California, Inc. (Limited
9                                         Indemnitor for Azusa Land Reclamation
                                          Co., Inc.)

10

11

12  Agent Authorized to Accept Service on Behalf of Above-signed Party:

13
                                  Martin J. "Kelly" McTigue
14                                MORGAN, LEWIS & BOCKIUS LLP
                                  300 South Grand Avenue
15                                22nd Floor
                                  Los Angeles, CA 90071
16                              Tel.: 213.612.2500
                                Fax:  213.612.2501
17

18

19

20

21

22

23

24

25

26

27

28

                              30

1    THE UNDERSIGNED PARTY enters into this Consent Decree in the
2    matter of United States v. Azusa Land Reclamation Co., Inc., et al., relating to
     the BPOU Area.

3

4    FOR DEFENDANT FAIRCHILD HOLDING CORP.

5

6

7    Dated: June 6, 2005          By: Donald E. Miller

8                                      Vice President

9

10

11

12   Agent Authorized to Accept Service on Behalf of Above-signed Party:

13
                                ATTACHED
14

15

16                              Tel.:
                                Fax:
17

18                              CT Corporation Systems
                                818 West 7th Street
19                              Los Angeles, CA 90017

20

21

22

23

24

25

26

27

28

31

SCANNED

1    THE UNDERSIGNED PARTY enters into this Consent Decree in the
2    matter of United States v. Azusa Land Reclamation Co., Inc., et al., relating to
     the BPOU Area.

3

4    FOR DEFENDANT HARTWELL CORPORATION

5

6

7    Dated:  6/8/05            Paul Tamborino

8

9

10

11

12   Agent Authorized to Accept Service on Behalf of Above-signed Party:

13

14

15

16                                    Tel.:
                                      Fax:
17

18                                    Paul Tamborrino
                                      Hartwell Corporation
19                                    900 S. Richfield Rd.
                                      Placentia, CA  92870
20                                    (714) 579-4438
                                      Fax (714) 579-4477
21

22

23

24

25

26

27

28

                              32

1      THE UNDERSIGNED PARTY enters into this Consent Decree in the
matter of United States v. Azusa Land Reclamation Co., Inc., et al., relating to

2 the BPOU Area.

3

4 FOR DEFENDANT OIL & SOLVENT PROCESS COMPANY

5

6

7 Dated: _July 14, 2005_              _[signature]_

8

9

10

11

12 Agent Authorized to Accept Service on Behalf of Above-signed Party:

13

14                   Waste Management
                  8310 S. Valley Hwy., Suite 200
                  Englewood, Colorado 80112

15

16                      Tel.:  303-914-1454
                     Fax:  303-914-9927

17

18

19

20

21

22

23

24

25

26

27

28

1   THE UNDERSIGNED PARTY enters into this Consent Decree in
the matter of United States v. Azusa Land Reclamation Co., Inc., et al.,
2   relating to the BPOU Area.

3
FOR DEFENDANT REICHHOLD, INC., formerly known as
4   REICHHOLD CHEMICALS, INC.

5

6
Dated: ___7/12/2005_____
7

8

9

10

11

12
Agent Authorized to Accept Service on Behalf of Above-signed Party:
13

14

15

16

17

18
Norman A. Dupont
Richards Watson & Gershon
19   355 South Grand Avenue, 40th Floor
Los Angeles, CA 90071-3101
20   Tel: (213) 626-8484
Fax: (213) 626-0078
21

22

23

24

25

26

27

28

1        THE UNDERSIGNED PARTY enters into this Consent Decree in the
2   matter of United States v. Azusa Land Reclamation Co., Inc., et al., relating to
    the BPOU Area.

3

4   FOR DEFENDANT WINCO ENTERPRISES INC., formerly known as
    WYNN OIL COMPANY

5

6

7   Dated: 22 July 05                    Thomas a. Pimio d.
8                                         VICE PRESIDENT

9

10

11

12   Agent Authorized to Accept Service on Behalf of Above-signed Party:

13

14                                 Thomas L. Meyer
                                   c/o Parker-Hannifin Corporation
15                                 6035 Parkland Boulevard
                                   Cleveland, OH  44124-4141
16                         Tel.:   216/896-2809
                           Fax:    216/896-4027
17

18

19

20

21

22

23

24

25

26

27

28

                                     35



**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**OFFICE OF THE CLERK**

# THE   EXHIBIT (S)   AND / OR ATTACHMENT(S)  TO THIS DOCUMENT ARE  AVAILABLE  I N  "THE RECORDS SECTION"  OF  THE   CLERK'S OFFICE.